# IN THE COURT OF APPEALS OF IOWA

No. 20-0587
Filed August 5, 2020

**IN THE INTEREST OF D.G. and G.G.,**
**Minor Children,**

**L.H., Mother,**
　　Appellant,

**J.G., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Page County, Jennifer A. Benson, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights to two of their children. **AFFIRMED ON BOTH APPEALS.**

C. Kenneth Whitacre, Glenwood, for appellant mother.

Justin R. Wyatt of Woods, Wyatt, & Tucker PLLC, Glenwood, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Vicki R. Danley, Sidney, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., May, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A mother and father separately appeal the termination of their parental right to their children, D.G. and G.G.[1] Both parents challenges the statutory grounds authorizing termination and whether termination is in the children's best interests. We affirm.

**I. Facts and Prior Proceedings**

This is the second appeal involving this family. We set out the following facts relating to the parents' rights to the youngest two of their five children in our first opinion:

> The department of human services [(DHS)] intervened in 2015, following the birth of the parents' fourth child[, G.G]. The department instituted a safety plan based on concerns of drug use by the mother. [G.G.] stayed with relatives for approximately two months, then was formally removed from the parents' care in a separate proceeding. He was ultimately reunited with his parents, and the district court closed the case.
> Less than one year later, the youngest child[, D.G.,] was born with marijuana in his system. The State filed a petition to have all five children adjudicated in need of assistance.
> On the date of the scheduled adjudicatory hearing, the department drug-tested the parents and found they had methamphetamine in their systems. The district court granted the adjudication petition and ordered the children removed from parental care. The department placed the older three children with their maternal grandmother. The youngest two children, who are the subject of this appeal, ended up with their maternal great-aunt.

---

[1] We note the father is not listed on G.G.'s birth certificate, and he is not married to the mother. *See* Iowa Code § 232.2(39) (2019) (defining parent). Both the mother and father report that the father is G.G.'s biological father. No party takes issue with the father participating or suggests he does not have established parental rights to terminate. The juvenile court terminated the parental rights of any unknown father to G.G. in an August 2018 termination order. In a prior appeal involving this family, we addressed the father's parental rights to G.G. noting he personally acknowledged that he is G.G.'s biological father. *See In re D.G.*, No. 18-1480, 2019 WL 1294228, at *2–3 (Iowa Ct. App. Mar. 20, 2019). Following this reasoning, we again address the father's rights to G.G. because he acknowledged he is G.G.'s biological father.

The parents continued to test positive for methamphetamine and marijuana for several months, but, in time, their drug use declined. Beginning four months before the termination hearing, they tested negative for methamphetamine. Although the father tested positive for marijuana after that date, a hair test administered in the month preceding the termination hearing tested negative for all substances, and the father testified he stopped using marijuana. The mother equivocated on whether she curtailed use of the drug. But the department caseworker agreed the department typically does not remove children for marijuana use by the parents. Both parents attended substance-abuse counseling and participated in other services designed to address their substance abuse. They also participated in several weekly visits with their children.

Ultimately, the State recommended against termination of parental rights to the older three children but petitioned to terminate parental rights to the youngest two children. Following a two-day termination hearing, the district court granted the termination petition pursuant to Iowa Code section 232.116(1)(e) and (h) [(2018)] (allowing the court to terminate parental rights where there is an absence of significant and meaningful contact or where the children cannot be returned to parental custody, respectively).

*D.G.*, 2019 WL 1294228, at *1–2 (footnote omitted).

Both parents appealed. The father challenged both statutory grounds relied upon by the juvenile court, but the mother only challenged one ground. *Id.* at *2–3. We found Iowa Code section 232.116(1)(h) satisfied as to the father and the mother. *Id.* (finding the children could not return safely to the father's care and affirming the statutory grounds as to the mother based on the unchallenged ground found by the juvenile court). But both parents argued termination was not in the children's best interests due to the familial bond. *Id.* We agreed, noting the children's strong bonds with their parents as well as their bonds with their older three siblings. *Id.* We reversed the termination orders as to both parents. *Id.* at *3.

Following reversal of the first termination order in March 2019, the juvenile court ordered reasonable efforts toward reunification to resume. On the way to the

first visit following the court's order, G.G. began to vomit. The parents agreed to cancel the visit due to G.G.'s vomiting. The day of the next scheduled visit, G.G. had a nightmare at daycare. Care providers observed him "whimpering and yelling that he did not want to go back." When care providers woke G.G., they discovered that he had soiled himself. The guardian ad litem and a DHS worker agreed G.G. should not attend visitation with the parents that evening. However, D.G. attended the visitation.

A doctor examined G.G. and found G.G. "did not demonstrate any signs of illness" to explain his vomiting and soiling. So DHS obtained a mental-health evaluation for G.G. to determine if G.G. had mental-health needs that needed to be addressed. G.G.'s therapist recommended visitations between both G.G. and D.G. and the parents be fully supervised until the parents completed family therapy with G.G. However, the parents have not consistently participated in family therapy, and visitations remain supervised.

The mother claims she received an updated mental-health evaluation in September 2019. However, because the mother did not sign a release for DHS to communicate with the facility, DHS could not confirm the mother completed an evaluation or received any recent treatment. Similarly, the father claims he had engaged in mental-health services, but this could not be confirmed.

Both parents also obtained updated substance-abuse evaluations. However, they were both discharged from treatment due to lack of attendance.

The parents expressed difficulty obtaining transportation to drug screens, so DHS arranged for in-home drug testing. However, the mother tested positive for THC twice and missed several drug screens since reasonable efforts resumed.

The father also tested positive for THC. And the father failed to complete some of the in-home drug testing provided, though we note some tests occurred while he was at work.

So the State once again petitioned for termination of the parents' parental rights in November 2019. And the juvenile court terminated the parents' parental rights to both children. Again, both parents appeal.

## II. Scope and Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under Iowa section 232.116(1) (2019) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

## III. Discussion

### A. Statutory Grounds

Both parents challenge the statutory grounds authorizing termination. The juvenile court authorized termination pursuant to Iowa Code section 232.116(1)(d), (f), and (h). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground we find supported by sufficient evidence. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will address paragraph (f) as to G.G. and paragraph (h) as to D.G. These paragraphs differ slightly. Paragraph (f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Paragraph (h) is nearly identical except it applies to a child who is "three years of age or younger" and only requires the child be removed "for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." But the parents only challenge the fourth

element under both paragraphs. [2] As we found on the parents' first appeals, we conclude the children cannot be safely returned to either parent.[3]

Substance abuse remains a concern for us. Both parents tested positive for THC following our first reversal and remand.

This is concerning with respect to the father because he testified at the first termination hearing that he stopped using marijuana and recent testing supported that. *See D.G.*, 2019 WL 1294228, at *1. But he resumed his drug use following our reversal, testing positive for THC twice. And he missed some drug testing. We presume those tests, at least the ones he did not miss because of his work schedule, would have resulted in positive tests. *See, e.g.*, *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances."). Given the father's backslide into marijuana use and his fairly recent history with methamphetamine, we are concerned he may resume methamphetamine use as he did marijuana use. *See In re R.O.*, No. 17-1408, 2017 WL 6517532, at *2 (Iowa Ct. App. Dec. 20, 2017) (describing periods of methamphetamine sobriety of up to two-and-a-half years as "relatively short

---

[2] The mother's petition on appeal only challenges paragraphs (d) and (h). Her petition does not challenge paragraph (f), which is applicable to G.G. But we note the elements to paragraph (f) are largely similar to paragraph (h); and the only element she challenges under paragraph (h) is substantively identical to the fourth element of paragraph (f). So, if she would have challenged, or intended to challenge, paragraph (f) under the fourth element, our analysis would be the same.

[3] Both parents argue it is safe for the children to return home because the juvenile court closed the child-in-need-of-assistance proceedings for their three oldest children. But we review this case independently of those cases that are not before this court.

periods of sobriety"); *see also In re J.P.*, No. 19-11633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) (noting "[m]ethamphetamine is a scourge"). This concern is compounded by the father's lack of participation in and dismissal from substance-abuse treatment. *See, e.g., In re D.W.*, No. 19-0438, 2019 WL 2145856, at *1 (Iowa Ct. App. May 15, 2019); *In re K.S.*, No. 13-1420, 2014 WL 1234472, at *3 (Iowa Ct. App. Mar. 26, 2014) (considering the father's lack of substance-abuse treatment participation as a factor weighing in favor of termination).

And like with the father, we have concerns about the mother's sobriety. She admits to continued marijuana use as a means to address pain associated with various medical conditions. Her testimony suggests she feels her drug use is necessary to avoid use of prescription opiates. *See In re A.M.*, No. 20-0116, 2020 WL 1881109, at *2 (Iowa Ct. App. Apr. 15, 2020) (considering a mother's self-medication with marijuana as a factor weighing in favor of determining her children could not return to her care). And we presume her missed drug tests also would have resulted in positive tests. *See, e.g., L.B.*, 2017 WL 6027747, at *2; *C.W.*, 2014 WL 5865351, at *2. The mother's continued self-medication practices coupled with her history of methamphetamine use and lack of substance-abuse treatment leave us concerned about her future drug use.

We also note the parents have not progressed past supervised visitation. *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) (recognizing visitations should progress and require less supervision before reunification can occur). This is because the parents have not participated in the recommended family therapy, which is also concerning. We understand that the

parents faced certain obstacles to the therapy, those being transportation and the father's work schedule. But the parents had access to one vehicle, DHS provided gas cards to the family, and the therapist offered to make herself available on evenings and weekends in order to work around the father's work schedule. In short, others involved in this case made every attempt to facilitate the needed family therapy, but the parents did not meaningfully participate.[4]

For these reasons, we find the first step in our review reveals the State established grounds for termination under section 232.116(1) as to both parents.

### B. Best Interests

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

With respect to both parents, we conclude termination is in the children's best interests. The parents' lack of participation in family therapy demonstrates, intentionally or not, that the parents are not willing to put in the work to rebuild their relationships with the children. The children are integrated into their family foster

---

[4] The mother participated in one session in December 2019.

placement and look to them to meet their physical and emotional needs. In fact, they refer to their foster placements as "Mom" and "Dad." And their foster parents would like to adopt the children. *See* Iowa Code § 232.116(2)(b).

### C. Exceptions to Termination

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child[ren]," to determine whether the parent-child relationships should be saved. *Id.* (citation omitted).

Both parents contend the juvenile court should have applied section 232.116(3)(c) to forgo termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship[s]." We recognize we previously applied the exception to preclude termination with respect to this family. *D.G.*, 2019 WL 1294228, at *3. And in doing so we considered the children's relationships not only with the parents but their older siblings as well. *Id.* We provided the parents a second chance at reunification, but the parent-child relationships have since diminished. The parents place blame for this on the guardian ad litem and DHS, noting the lack of services they received while the first appeal was pending. But we recognize once services resumed, DHS arranged for services specifically intended to build and strengthen

the familial bonds.  However, those bonds are not what they once were, and we cannot say they are now so strong to justify precluding termination.  Therefore, we decline to apply this permissive exception to either parent.

**IV. Conclusion**

The juvenile court was correct in terminating both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**